PEOPLE ex rel. GOETZGER v. ROOSEVELT et al., Police Commissioners.

(Supreme Court, Appellate Division, First Department. June 29, 1896.)

POLICEMAN—NEGLECT OF DUTY—SPECIFICATIONS.

A charge against a policeman of neglect of duty is not sustained by specifications that the neglect consisted of a failure to deliver promptly to the desk sergeant a handkerchief into which the policeman had placed the effects taken by him from the body of the dead man whom he had brought to the station, or to account for the same after he had put them in the handkerchief, where it was not shown that any rule of the police department required policemen to take such things immediately to the desk.

Certiorari by Frederick Goetzger to review the action of Theodore Roosevelt and others, constituting the board of police commissioners of the city of New York, in dismissing relator from the police force. Reversed.

Sergeant Kear presented the following charge and specifications:

"I hereby charge Patrolman Frederick Goetzger, of the 20th precinct, with neglect of duty.

"Specifications.

"In this, to wit: Said patrolman, Frederick Goetzger, at 5:45 a. m., October 1, 1895, brought to the 20th precinct station house the body of Felix McConnell, age 50 years, of 433 West 33d street, who had died suddenly at 10th avenue and 28th street. The said patrolman, while searching the body in the sitting room of the station house, took from the pockets of the deceased $6 in bills, some small change, and other articles, which he placed in a handkerchief, and failed to deliver promptly to the sergeant at the desk. Subsequently Doorman Thomas Golden discovered said handkerchief, with articles, on a table in the rear of the station house office, and brought the same to the desk, when it was discovered that $6 of said articles was missing, and Patrolman Frederick Goetzger failed to give any account of said $6, or how it was lost."

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Louis J. Grant, for relator.

Theodore Connoly, for respondent.

O'BRIEN, J. The charge is neglect of duty, and from the specifications it is difficult to determine whether such neglect consisted of a failure to deliver promptly to the sergeant at the desk a handkerchief into which the effects taken from the dead man had been placed, or the taking of six dollars in bills, or failing to account for the same after the relator had put them in the handkerchief. If the former, it was not shown that any rule of the department required the relator to take the articles immediately to the desk;

and, as there was no direct accusation that he took the money, so there was no proof; and all that is left of the specifications is the failure of the relator to account for the money after he had placed it, with the other articles, in a handkerchief, on a table, where they were found by the doorman. The judgment of dismissal is equally indefinite, and it cannot be known from this record upon what ground the commissioners placed their decision. If we examine the testimony in the same general way that it was given, we are equally at a loss to determine upon what evidence the dismissal of the relator can be justified. It is true, his past record was before the commissioners; but, as this could not be considered upon the question of his guilt, we must assume, in the absence of proof, that it was properly confined to the question of the punishment after the commissioners had concluded that he was guilty. There is no dispute but that relator took the body of a man who had died suddenly in the street to the station house. It was his duty to search the pockets of the deceased, which he proceeded to do in the presence of two other officers and the doorman. Among other articles were some silver and six dollars in bills. The former the relator gave to one of the other officers to count, and proceeded to count the bills himself. There was no secrecy in doing this, as it was done openly in the presence of at least three persons, who saw the silver and bills, and who saw the relator place them in a pocket handkerchief belonging to the deceased, spread on a chair. There the articles remained, the relator going out, leaving the articles and other persons in the room; and on returning an order was given to take the dead man into the corridor, and in this relator assisted. He returned again, and, taking up the handkerchief, started for the front room, wherein was the sergeant's desk. At this point the only conflict in the testimony begins. Relator testified that as he reached the front room he saw the wife of the dead man in hysterics. He thereupon put the handkerchief on a table, and went to help the woman up; that he returned to the back room, to have the dirt removed from his uniform, and there received an order from the sergeant, who directed him to make out a memorandum or list of articles. The doorman who found the handkerchief with the articles therein on the table carried it to the desk, and upon examination it was found that the bills were gone, having disappeared in the confusion. The sergeant and the doorman both called relator's attention to the disappearance of the bills, and he admitted he had placed them in the handkerchief, but was unable to say who had taken them. It was also sought to be shown that relator did not assist the wife in hysterics, but the extent to which any witness would go when pressed on the point was that he did not see him, but would not swear he was not there at that time. As stated, it is not charged that relator took the money himself, and all the probabilities are against it. If he would rob the dead, his opportunity was present before he brought the body into the station house; and it is past belief that, after openly exhibiting the bills and placing them in the handkerchief, he would hazard his position by purloining six

dollars, which so many knew all about. While the handkerchief lay on the table, 20 persons, at least, were in the front room, against any one of whom the charge of taking the bills was equally strong, or, to speak of it more accurately, equally weak. We think, too, that the relator is supported not only by other evidence, but the probabilities in his version that it was the presence of the wife in hysterics that led him to deposit the handkerchief on the table, and run to her assistance, and that caused the delay in reporting the articles to the sergeant at the desk. There is no suggestion of any other reason, and yet it does appear that in passing from the back room to the front with the handkerchief something occurred to cause the relator to place the handkerchief on the table, and intercept his reporting to the sergeant at the desk. We think we have sufficiently pointed out that, as relator was not charged or tried for theft, but only with having failed to report at once to the desk, which failure resulted in the loss of the six dollars, this failure was satisfactorily explained by a clear preponderance of the evidence and the probabilities, and it was error on such a charge, as so explained, to dismiss relator from the force.

The action of the commissioners should be accordingly reversed, with costs, and the relator restored to his position. All concur.